UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| Heriberto Valiente, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Publix Super Markets, Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Publix Super Markets, Inc. ("Defendant") manufactures, labels, markets, and sells cough suppressant and oral anesthetic lozenges purporting to contain an appreciable amount of lemon ingredients under the Publix brand (the "Product").



2. The Product's representations include the statement "lemon," and pictures of a yellow-colored lozenge and a halved lemon.




3. These representations are false, deceptive, and misleading, because the Product lacks the amount and type of lemon ingredients expected by Plaintiff and consumers.

4. Consumers prefer foods and other consumables, like cough suppressant and oral anesthetic lozenges, to get their taste from food ingredients, which have nutritive value, instead of added flavoring because the former are more natural, less processed, and not exposed to additives and solvents used in the manufacturing of flavoring substances.

5. Lemon ingredients are considered "food" because they are a source of nutritive value.

6. Extractives, oils, and essences from lemons are concentrated, compounded, synthesized, and mixed with solvents and additives, to create lemon flavor, which lacks the nutritive value of lemons. *See* 21 C.F.R. § 101.22(a)(3).

7. Consumers expect the Product has a non-*de minimis* amount of lemon ingredients, based on the prominent statement "lemon," and the pictures of the yellow-colored lozenge and halved lemon.

8. The packaging and labeling are misleading because they give consumers the impression the Product contains a greater amount of lemon ingredients than it does.

9. The Product does not contain an appreciable amount of lemon, as consumers

understand this citus fruit, revealed, in part, by the ingredient list.

> *Inactive Ingredients:* Beta carotene (color), cornstarch, corn syrup, eucalyptus oil, glycerin, honey, medium chain triglycerides, natural and artificial flavors, soybean oil, sucrose, and water.

10. Instead of lemon ingredients, it contains "natural and artificial flavors."

11. According to flavor expert Bob Holmes, if the Product provided "all the flavor depth" and benefits of lemons, the ingredients would include lemon oil, lemon extract or lemon juice, instead of "natural and artificial flavors."

12. "Natural and artificial flavors" fails to tell consumers that the Product's taste is not mostly from lemons, but a mix of essences from a variety of fruits and vegetables that are combined in a laboratory, with additives and solvents, into highly concentrated formulas.

13. Federal and identical state regulations require that if a product contains a *de minimis*, negligible amount of lemon ingredient that is insufficient to characterize it, supplemented by the oils, essences or extractives of lemon, the front label would be required to state, "Natural Lemon Flavored Cough Drops." 21 C.F.R. § 101.22(i)(1)(i).

14. Lemons get their flavor from alcohols, aldehydes, esters, ethers, terpenes, hydrocarbons, and ketones.

15. These compounds include beta-pinene, beta-myrcene and γ-terpinene, which provide the "woody" and "piney" notes of real lemons, and their characteristic sour taste, complemented by sweetness and tartness.

16. Laboratory analysis revealed or would reveal that the Product's lemon taste, contributed by the "natural and artificial flavors" ingredient, is mainly from added limonene and

citral, through the isomers neral and geranial, without the variety and relative amounts of other essential lemon compounds.

17. These flavoring compounds are used to substitute for real lemons, and are more concentrated, so a smaller amount can be used.

18. The relative absence of these essential lemon compounds reveals or would reveal the use of a *de minimis* amount of real lemons, because if the Product contained more lemon ingredients, the levels of these compounds would be higher.

19. Consumers also value lemons for their nutritive purposes.

20. Lemons are high in vitamin C, a primary antioxidant which protects cells from damaging free radicals.

21. Another group of antioxidants, polyphenols, are linked with reductions in blood pressure, hypertension, and protections from osteoporosis.

22. Even if Plaintiff scrutinized all elements of the packaging and labeling, it would not cure the misrepresentations.

23. Whether a product contains real lemons or only tastes like lemon is basic front label information consumers rely on when making quick decisions at the store.

24. Defendant did not have to name the Product "honey-lemon," but chose to, since this is more enticing to consumers.

25. The Product contains and makes other representations and omissions which are false or misleading.

26. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

27. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

28. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

29. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

30. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $1.79 per 30 lozenges, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

### Jurisdiction and Venue

31. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

32. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

33. Plaintiff Heriberto Valiente is a citizen of Florida.

34. Defendant Publix Super Markets, Inc. is a Florida corporation with a principal place of business in Lakeland, Polk County, Florida.

35. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

36. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, in hundreds of locations, in the states covered by Plaintiff's proposed classes.

37. The Product is available to consumers from Defendant's retail stores and its website.

38. Venue is in this District because a substantial part of the events or omissions giving rise to the claims occurred here, including Plaintiff's purchase and consumption of the Product, exposure to and reliance on the representations, and his awareness that they were misleading.

39. This action should be assigned to the Miami Division because Plaintiff resides in Miami-Dade County and a substantial part of the events or omissions giving rise to the claims occurred in Miami-Dade County, including Plaintiff's purchase and consumption of the Product, exposure to and reliance on the representations, and his awareness that they were misleading.

Parties

40. Plaintiff Heriberto Valiente is a citizen of Miami, Florida, Miami-Dade County.

41. Defendant Publix Super Markets, Inc. is a Florida corporation with a principal place of business in Lakeland, Florida, Polk County.

42. Publix supermarkets were founded in 1930 by George W. Jenkins.

43. Since its founding, the company has stayed true to its founder's philosophy of treating employees and customers like family.

44. Publix is the largest employee-owned company in the United States.

45. Every year, Publix is hailed as the No. 1 supermarket for customer satisfaction, one of Fortune's "100 Best Companies to Work For," and a model for its sustainability efforts and community involvement.

46. Publix ranks No. 1 on Fortune's "World's Most Admired Companies" in the food store category.

47. These rankings are based on evaluations by Publix workers and others in its industry, in areas from investment value to social responsibility.

48. Publix is one of a handful of grocery chains in the United States with over 1,000 locations.

49. Publix operates throughout the Southeastern United States, with locations in Florida, Georgia, Alabama, South Carolina, Tennessee, North Carolina, and Virginia.

50. Consumers choose Publix because it embodies its well-known slogan, "Where Shopping Is a Pleasure," based on its convenience, cleanliness, ease of navigation, friendly workers, and its private label products.

51. While Publix stores sell leading national brands, they sell a large number of products under one of their private label brands, Publix.

52. Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

53. Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

54. Products under the Publix brand have an industry-wide reputation for quality and value.

55. In releasing products under the Publix brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

56. Defendant is able to get national brands to produce its private label items due its loyal customer base and tough negotiating.

57. That Publix branded products met this high bar was proven by focus groups, which rated them above the name brand equivalent.

58. Private label products generate higher profits for retailers because national brands spend significantly more on marketing, contributing to their higher prices.

7

59. A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

60. Private label products under the Publix brand benefit by their association with consumers' appreciation for the Publix brand as a whole.

61. The development of private label items is a growth area for Publix, as they select only top suppliers to develop and produce Publix products.

62. The Product is available to consumers from Defendant's retail stores and its website.

63. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at Publix, at locations including 4260 SW 152nd Ave, Miami, FL 33185, on June 4, 2022, among other times.

64. Plaintiff believed the Product contained a non-negligible amount of lemon ingredients, instead of a *de minimis* or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons.

65. Plaintiff wanted more than a "lemon" taste, even though he failed to receive that, because the Product lacked the broad spectrum of flavor compounds associated with lemon ingredients.

66. Plaintiff wanted more than a "lemon" taste, but lemon ingredients, because of their nutritive benefits and value.

67. Plaintiff did not expect the Product substituted lemon ingredients with flavor compounds subjected to synthesis and concentration, using additives and solvents.

68. Plaintiff bought the Product because he expected it contained a non-negligible amount of lemon ingredients, instead of a *de minimis* or negligible amount, such as isolated lemon

8

compounds, which failed to provide the nutritive value and taste of lemons because that is what the representations said and implied.

69. Plaintiff relied on the words, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, and/or claims made by Defendant in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

70. Plaintiff did not expect a product, especially from the Publix brand, would represent it contained lemon ingredients, when it contained a negligible amount of lemon, not equivalent in any way to the halved lemon prominently depicted on the front of the Product label.

71. Plaintiff was disappointed because he believed the Product contained a non-negligible amount of lemon ingredients, instead of a *de minimis* or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons.

72. Plaintiff bought the Product at or exceeding the above-referenced price.

73. Plaintiff would not have purchased the Product if he knew the representations and omissions were false and misleading or would have paid less for it.

74. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

75. The Product was worth less than what Plaintiff paid, and he would not have paid as much absent Defendant's false and misleading statements and omissions.

76. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

77. Plaintiff is unable to rely on the labeling and representations not only of this Product,

but for other similar cough suppressant and oral anesthetic lozenges with added fruit ingredients, because he is unsure whether those representations are truthful.

## Class Allegations

78. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Florida Class:** All persons in the State of Florida who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Alabama, Georgia, North Carolina, South Carolina, Tennessee, and Virginia, who purchased the Product during the statutes of limitations for each cause of action alleged.

79. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

80. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

81. Plaintiff is an adequate representative because his interests do not conflict with other members.

82. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

83. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

84. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

85. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Florida Deceptive and Unfair Trade Practices Act,
Fla. Stat. § 501.201, *et seq.*</u>

(Consumer Protection Statute)

86. Plaintiff incorporates by reference all preceding paragraphs.

87. Plaintiff and class members desired to purchase a product that contained a non-negligible amount of lemon ingredients, instead of a *de minimis* or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons.

88. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

89. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

90. Plaintiff relied on the representations that the Product contained a non-negligible amount of lemon ingredients, instead of a *de minimis* or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons.

91. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

92. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

93. Defendant intended that Plaintiff and each of members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

11

94. As a result of Defendant's use or employment of artifice, unfair or deceptive acts or business practices, Plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

95. In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

<u>Breaches of Express Warranty,<br>
Implied Warranty of Merchantability/Fitness for a Particular Purpose and<br>
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

96. The Product was manufactured, identified, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it contained a non-negligible amount of lemon ingredients, instead of a *de minimis* or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons.

97. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

98. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

99. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the Product contained a non-negligible amount of lemon ingredients, instead of a *de minimis* or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons.

100. Defendant's representations affirmed and promised that the Product contained a non-negligible amount of lemon ingredients, instead of a *de minimis* or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons.

101. Defendant described the Product as one which contained a non-negligible amount of lemon ingredients, instead of a *de minimis* or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons, which became part of the basis of the bargain that the Product would conform to its affirmations and promises.

102. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

103. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company, known for its authentic, high-quality products, honestly marketed to consumers.

104. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

105. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

106. Plaintiff provides notice to Defendant that it has breached the express and implied warranties associated with the Product.

107. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

108. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

109. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained a non-negligible amount of lemon ingredients, instead of a *de minimis*

or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons.

110. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it contained a non-negligible amount of lemon ingredients, instead of a *de minimis* or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

111. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Negligent Misrepresentation

112. Defendant had a duty to truthfully represent the Product, which it breached.

113. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company, known for its authentic, high-quality products, honestly marketed to consumers.

114. Defendant's representations regarding the Product went beyond the specific representations on the packaging, as they incorporated its extra-labeling promises and commitments to quality, transparency, and putting customers first that it has been known for.

115. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

116. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

117. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the

Product.

118. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

119. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained a non-negligible amount of lemon ingredients, instead of a *de minimis* or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons.

120. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity, through statement and omission, of the representations.

121. Defendant knew of the issues described here yet did not address them.

122. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

### Unjust Enrichment

123. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the

   challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   September 13, 2022

                                        Respectfully submitted,

                                        /s/Will Wright
                                        The Wright Law Office, P.A.
                                        515 N Flagler Dr Ste P-300
                                        West Palm Beach FL 33401
                                        Tel: (561) 514-0904
                                        willwright@wrightlawoffice.com

                                        Sheehan & Associates, P.C.
                                        Spencer Sheehan (*Pro Hac Vice* forthcoming)
                                        60 Cuttermill Rd Ste 412
                                        Great Neck NY 11021
                                        Tel: (516) 268-7080
                                        spencer@spencersheehan.com