**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 1: 22-cv-22930-RNS**

HERIBERTO VALIENTE, individually and
on behalf of all others similarly situated,

                    Plaintiff,

     v.

PUBLIX SUPER MARKETS, INC.,

                  Defendant.

---

**DEFENDANT PUBLIX SUPER MARKETS, INC.'S**
**MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

Daniel B. Rogers
Danielle A. Greenberg
SHOOK, HARDY & BACON L.L.P.
201 South Biscayne Blvd., Suite 3200
Miami, Florida 33131
(305) 358-5171
drogers@shb.com
dgreenberg@shb.com

Brian T. Guthrie
SHOOK, HARDY & BACON L.L.P.
100 North Tampa Street, Suite 2900
Tampa, Florida 33602
(813) 202-7100
bguthrie@shb.com

*Counsel for Defendant Publix Super Markets, Inc.*

## TABLE OF CONTENTS

INTRODUCTION & FACTUAL BACKGROUND ................................................................... 1

LEGAL STANDARD .............................................................................................................. 3

ARGUMENT ........................................................................................................................... 3

I.      PLAINTIFF LACKS STANDING. ............................................................................. 3

        A.      Plaintiff Has Sustained No Injury-in-Fact. ..................................................... 4

        B.      Plaintiff Lacks Standing to Obtain an Injunction. .......................................... 5

II.     PLAINTIFF'S STATE-LAW CLAIMS ARE PREEMPTED BY FEDERAL
        LAW. ........................................................................................................................... 6

        A.      The FDA Monograph Process for OTC Drugs. ............................................... 6

        B.      Federal Requirements for Antitussives. ........................................................... 6

        C.      Plaintiff's Claims Are Preempted Because This Product Label Complies
                with the Applicable FDA Monograph, and Plaintiff's State-Law Claims
                Seek to Impose Different/Additional/Non-Identical Labeling
                Requirements. ................................................................................................... 7

III.    PLAINTIFF FAILS TO STATE ANY VIABLE CAUSES OF ACTION. .................. 8

        A.      The Product's Label Was Not Deceptive, and It Complied With Federal
                Regulations, Thereby Precluding Liability Under the FDUTPA. ..................... 8

                1.      No Reasonable Person Would Read the Label in the Deceptive
                        Manner Plaintiff Does. ......................................................................... 8

                2.      The FDUTPA Claim Is Precluded by the Statute's Safe Harbor
                        Provision. ........................................................................................... 12

        B.      The Other State Consumer Fraud Claims Fail. .............................................. 13

        C.      The Express Warranty, Implied Warranty, and MMWA Claims Fail. ........... 14

                1.      Plaintiff Did Not Provide the Required Pre-Suit Notice. ................... 14

                2.      Publix's Label Did Not Warrant that the Product Contained Real
                        Lemon. ................................................................................................ 15

                3.      Publix Did Not Breach Any Implied Warranties. .............................. 16

                4.      Plaintiff's MMWA Claim Also Fails for Multiple Reasons. .............. 16

        D.      The Negligent Misrepresentation and Fraud Claims Fail. ............................. 17

                1.      The Economic Loss Rule Bars the Claims. ........................................ 17

                2.      The Fraud Claim Does Not Plead the Essential Elements. ................. 18

        E.      Plaintiff Does Not Plead An Actionable Unjust Enrichment Claim. .............. 18

CONCLUSION ....................................................................................................................... 19

Defendant Publix Super Markets, Inc. ("Publix") moves, pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), to dismiss the Class Action Complaint [ECF No. 1] filed by Plaintiff Heriberto Valiente because he lacks standing and fails to plead any viable causes of action.

### INTRODUCTION & FACTUAL BACKGROUND

This case concerns Publix's "honey-lemon menthol cough suppressant/oral anesthetic cough drops" and, in particular, the "honey-lemon" descriptor. Here is an image of the front label:



Although the adjective "honey-lemon" and the related images on the front label are intended to inform consumers that the cough drops have a honey-lemon flavor, Plaintiff purposefully mischaracterizes the statement to manufacture this putative class action.[1]

According to Plaintiff, he believed the words "honey-lemon," an image of a halved lemon, and an image of a "yellow-colored lozenge" amounted to a representation that the cough drops contained a "non-*de minimus* amount of lemon ingredients." Compl. ¶¶ 2, 7, 30, 64, 68–69. That

---

[1] This is not the first time Plaintiff's New York counsel has (mis)characterized a product's label in a putative class action complaint. He has filed over 450 putative class actions since January 1, 2020, the majority of which (mis)construe statements made on the label of a consumer product to claim they are false and misleading. *See Devey v. Big Lots, Inc.*, No. 21-CV-6688L, 2022 WL 6827447, at *n.3 (W.D.N.Y. Oct. 12, 2022) ("Plaintiff's counsel appears to have made misleading labeling claims somewhat of a cottage industry, having filed over 70 such cases in the Second Circuit, and a few dozen more in other circuits nationwide.").

is deceptive, Plaintiff says, because the product "lacks the amount and type of lemon ingredients expected by Plaintiff and consumers." *Id.* ¶ 3.[2] But no reasonable consumer would read this product's label in the manner alleged by Plaintiff to mean the product contained some unidentified "non-*de minimus*" amount of real lemon as an ingredient rather than lemon flavor. After all, the label's list of ingredients does not include lemon. Plaintiff's result-driven interpretation of the label is neither an objectively-fair reading of the entire label, in context, nor grammatically correct. In any event, Plaintiff does not allege he used the product, much less that it caused him a physical injury. While he contends the product was "worth less" than what he paid, *id.* ¶ 75, he does not allege that the product failed to provide the intended cough suppressant and oral anesthetic benefits.

Plaintiff nevertheless asserts six baseless counts against Publix, without even assigning them a number, on behalf of himself and Florida and Multi-State Classes of persons who purchased the product. *Id.* ¶ 78. The six claims are: violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); violation of other unidentified state consumer fraud acts; breach of express and implied warranties and the Magnuson Moss Warranty Act ("MMWA"); negligent misrepresentation; fraud; and unjust enrichment. *Id.* ¶¶ 86–123. Plaintiff seeks both monetary and injunctive relief. *Id.* at Prayer for Relief.

The Court should dismiss the Complaint in its entirety for multiple independent reasons:

- Plaintiff lacks standing to assert his claims, including his claim for injunctive relief.

- Plaintiff's state-law claims are preempted by federal law.

- Plaintiff fails to plead facts plausibly establishing that the statement "honey-lemon" on this label is false, deceptive, or misleading—the linchpin for all of his claims.

- The FDUTPA claim should also be dismissed under the statute's Safe Harbor Provision because the challenged practices are permitted by federal law.

---

[2] The Complaint alleges that the product "contains and makes other representations and omissions which are false and misleading," *id.* ¶ 25, alleges that Plaintiff relied upon unidentified statements by Publix "in digital, print and/or social media" and "through in-store, digital, audio, and print marketing," *id.* ¶ 69, and references other unidentified "extra-labeling promises and commitments," *id.* ¶¶ 114–15. Those vague allegations, which do not set forth the particulars of the "who, what, when, where, and how" of the alleged misrepresentations, fail to satisfy the heightened pleading standard for misrepresentation claims in Rule 9(b) and should not be considered in determining the viability of Plaintiff's claims. *Omnipol. A.S. v. Multinational Defense Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022) (affirming dismissal of fraud claim that was not pled in compliance with Rule 9(b)).

- Plaintiff lacks standing to sue under the unidentified non-Florida consumer fraud acts.

- The warranty claims fail on multiple levels, including lack of pre-suit notice and no facts demonstrating that Publix made—much less, breached—any express and implied warranties. In addition, the MMWA is inapplicable to over-the-counter ("OTC") drugs, like the cough drops at issue, at this price point.

- The economic loss rule bars the misrepresentation claims.

- The one-paragraph unjust enrichment claim alleges no *inequities* and is impermissibly based on allegedly *wrongful* conduct for which Plaintiff has a legal remedy.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, Plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663–64. Under Rule 8, Plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

To survive a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based on a facial (not factual) attack, Plaintiff must have "sufficiently alleged a basis of subject matter jurisdiction" in the Complaint, applying the standards similar to those governing 12(b)(6) review. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013).

## ARGUMENT

## I.  PLAINTIFF LACKS STANDING.

"One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 408 (2013). Plaintiff must show that he sustained (1) an injury-in-fact that is (2) fairly traceable to the defendant's challenged conduct and (3) redressable by a favorable ruling. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *accord Spokeo v. Robbins*, 578 U.S. 330, 338 (2016). Here, Plaintiff fails to allege facts demonstrating that he suffered any injury-in-fact. Further, his allegations show he is

aware of the purported flaws with the statement on the product's label and is thus not at risk of being deceived by it in the future, undermining his standing to seek prospective injunctive relief.

A.      **Plaintiff Has Sustained No Injury-in-Fact.**

Article III requires "an injury [to] be concrete, particularized, and actual or imminent." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). The injury cannot be "speculative." *Lujan*, 504 U.S. at 564 n.2. Where a complaint alleges a threat of future harm, the threat must be "certainly impending" as opposed to a mere possibility. *Lujan*, 504 U.S. at 564; *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). Thus, in cases like this one involving products, standing cannot be based solely on the risk that a product ***may possibly*** cause harm. *Hall v. Omega Flex, Inc.*, No. 13-61213-CIV-DIMITROULEAS, 2014 WL 12496551, at *9 (S.D. Fla. Jan. 17, 2014) (concluding plaintiffs lacked concrete and particularized injury-in-fact that is actual or imminent, where their products did not fail to function as intended). In the absence of an actual injury caused by the product, a mere increased risk of injury is "more speculative than imminent" and therefore cannot be a basis for standing. *Id*. (citing *Clapper*, 568 U.S. at 409).

In this case, Plaintiff alleges no personal injury. Although he alleges an economic injury—that the product was supposedly worth less than he paid due to the allegedly-misleading statement on the label—Plaintiff does not plead that the product failed to work as intended and provide the expected cough suppressant and oral anesthetic relief. Plaintiff makes only the conclusory allegation that he paid a "premium price" that was "higher than similar products" (which he never identifies) that are "represented in a non-misleading way." Compl. ¶ 30. Critically, however, he does not plead facts concerning the price of those unidentified comparable products to make plausible his conclusion that the "Product was worth less than what Plaintiff paid." *Id.* ¶ 75. *See Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1336–37 (S.D. Fla. 2007) (finding that to show damages under the price premium theory, plaintiff needed to demonstrate the hypothetical price Lipitor would sell if not for the purportedly misleading advertisements, and a determination of such hypothetical price was too speculative to be an "actual injury" under Article III); *see also Sabo v. Wellpet, LLC*, 282 F. Supp. 3d 1040, 1041–42 (N.D. Ill. 2017) (dismissing claim because "conspicuously absent from the complaint are any straightforward assertions about the price of

defendants' products; the price of comparable products … or any other measurable criteria … required to establish actual damages").[3]

Because Plaintiff pleads no facts showing an economic injury and does not even attempt to allege a personal injury, he lacks Article III standing, and all of his claims should be dismissed.

**B.    Plaintiff Lacks Standing to Obtain an Injunction.**

"The 'injury-in-fact' demanded by Article III requires an additional showing when injunctive relief is sought. In addition to past injury, a plaintiff seeking injunctive relief must 'show a sufficient likelihood that [s]he will be affected by the allegedly unlawful conduct in the future.'" *Barron v. Snyder's-Lance, Inc.*, No. 13-62496-CIV, 2015 WL 11182066, at *10 (S.D. Fla. Mar. 20, 2015) (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001)). In *Barron*, the plaintiffs sought an injunction to correct misrepresentations on a product's label. Although the plaintiffs alleged that they intended to purchase the product in the future if they could be confident the label was truthful and not misleading, this Court found they lacked standing because "a consumer fraud Plaintiff seeking to enjoin a manufacturer from deceptively labeling a product cannot establish Article III standing if she is not likely to purchase the 'noncompliant' product in the future." *Id*. at *11 (dismissing claim for injunctive relief); *accord Snyder v. Green Roads of Fla. LLC*, 430 F. Supp. 3d 1297, 1304 (S.D. Fla. 2020).

The same is true here. Plaintiff has not alleged—and cannot allege—a threat of future harm from supposedly being deceived about whether the product contains real lemon as an ingredient because he alleges he is now aware of the purported deception and states he "would not have purchased the Product if he knew the representations and omissions were false and misleading." Compl. ¶ 73. He thus lacks standing under Article III to seek such prospective injunctive relief. *See, e.g.*, *Valiente v. Unilever United States, Inc.*, No. 22-21507-CIV, 2022 U.S. Dist. LEXIS 222409, at *22–23 (S.D. Fla. Dec. 8, 2022) (dismissing identically-pled claim for injunctive relief for lack of standing (despite complaint sufficiently pleading an injury-in-fact)).[4]

---

[3] Nor does Plaintiff explain why he has incurred an economic injury in light of the Publix Guarantee: "We will never knowingly disappoint you. If for any reason your purchase does not give you complete satisfaction, the full purchase price will be cheerfully refunded immediately upon request." *See* https://www.publix.com/pages/policies/publix-guarantee (last accessed Jan. 16, 2023).

[4] *See also Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373–74 (S.D. Fla. 2015) ("Although the FDUTPA allows a plaintiff to pursue injunctive relief even where the individual plaintiff will

## II.    PLAINTIFF'S STATE-LAW CLAIMS ARE PREEMPTED BY FEDERAL LAW.

Preemption is a matter of law for the Court to decide. *Merck, Sharple & Dohme v. Albrecht*, 139 S. Ct. 1668, 1680 (2019). The Food, Drug, & Cosmetic Act ("FDCA"), which governs OTC medications like cough drops, expressly preempts all state-law claims that impose requirements that are "different from," "in addition to," or "otherwise not identical" with federal labeling requirements for such products. 21 U.S.C. § 379r(a). That is the case here—Plaintiff's state-law claims seek to impose requirements on the labeling of Publix's cough drops that are different, additional, and not identical to those imposed by federal law. The claims are thus preempted.

### A.    The FDA Monograph Process for OTC Drugs.

The FDA regulates most OTC medications through a monograph process. A monograph is a detailed set of FDA regulations that describe the conditions under which a category of drugs may be marketed without a prescription. *See* 21 C.F.R. § 330.1; *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 75 (2d Cir. 2013) (describing the monograph process). A monograph is "like a recipe" that "sets out the FDA-approved active ingredients for a given therapeutic class of OTC drugs" and specifies acceptable doses, formulations, and labeling. *Id.*

A monograph exists only after the FDA has appointed an advisory panel of independent experts that "review[s] all available data" and reports its conclusions and recommendations to the FDA "with respect to the safety and effectiveness of the drugs." 21 C.F.R. § 330.10(a). Based on the panel's recommendations, the FDA publishes a proposed monograph for public comment, and then publishes a "tentative final monograph" for further public comment. *Id.* § 310.10(a)(6). After a rigorous process of reviewing any objections, the entire administrative record, and the arguments made at any oral hearing, the FDA publishes a final monograph "establishing conditions under which a category of OTC drugs or a specific drug are generally recognized as safe and effective and not misbranded." *Id*. § 310.10(a)(9). Given the rigor of the FDA's monograph process, any OTC drug that complies with a monograph is considered safe, effective, and not misbranded. *Nat. Res. Def. Council*, 710 F.3d at 75.

### B.    Federal Requirements for Antitussives.

The FDA has published a final monograph for OTC antitussives (cough suppressants) that contain menthol, like the Publix cough drops, which contains a comprehensive set of labeling

---

not benefit from an injunction...it cannot supplant constitutional requirements. Article III of the Constitution requires that a plaintiff seeking injunctive relief allege a threat of future harm.").

requirements and specific disclosures that manufacturers must make on labels for such products (the "Monograph"). 52 Fed. Reg. 30,042 at 30,055–56 (Aug. 12, 1987) (codified at 21 C.F.R. § 341.74). The labels must, for example, include approved language describing the established indications for use. 21 C.F.R. § 341.74(b). They must include certain specified warnings. 21 C.F.R. § 341.74(c). They must include directions and dosage requirements. 21 C.F.R. §§ 341.74(d). The regulations also include specific requirements, where necessary, for products that contain certain active ingredients, including the menthol active ingredient found in Publix's cough drops. *See* 21 C.F.R. §§ 341.74(b)(vi). If an OTC cough suppressant's label meets the requirements set forth in these regulations in the Monograph, the product is "not misbranded." 21 C.F.R. § 341.1(a); *accord Nat. Res. Def. Council*, 710 F.3d at 75.

Importantly for this case, the ***FDA has chosen not to propose incorporation of 21 C.F.R. § 101.22 (regulations concerning food products) into the OTC labeling mandates*** for these OTC antitussive drug products. *See* Rulemaking History for OTC Antitussive Drug Products, FDA, https://www.fda.gov/drugs/historical-status-otc-rulemakings/rulemaking-history-otc-antitussive-drug-products (last accessed Jan. 10, 2023) (listing notices for rule proposals to the OTC antitussive monograph, spanning from 1976 to present); *see also* Over-The-Counter Human Drugs; Labeling Requirements, 64 Fed. Reg. 13254, 13263 (Mar. 17, 1999) (amending 21 C.F.R. §§ 201, 330, 331, 341, 346, 355, 358, 369, and 701) ("[T]he agency recognizes the possibility that more detailed regulations or guidance on the listing of inactive ingredients may prove necessary").

## C. Plaintiff's Claims Are Preempted Because This Product Label Complies with the Applicable FDA Monograph, and Plaintiff's State-Law Claims Seek to Impose Different/Additional/Non-Identical Labeling Requirements.

As another District Court Judge in Florida explained in dismissing on preemption grounds a similar product-labeling class action filed against Publix by this same plaintiff's counsel: "'no State … may establish or continue in effect ***any requirement … that is different from or in addition to, or that is otherwise not identical with, a requirement***' for OTC drugs in the [FDCA]." *Amara v. Publix Supermarkets, Inc.*, No. 8:22-cv-367-VMC-JSS, 2022 WL 3357575, at *3 (M.D. Fla. Aug. 12, 2022) (quoting 21 U.S.C. § 379r(a)) (emphasis added); *see also Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1196 (11th Cir. 2018) ("[T]o avoid preemption, [the] state-law claim must be ***identical***, not merely consistent, with federal requirements."); *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 375 (S.D.N.Y. 2014) ("[P]reemption is certainly appropriate when

a state law prohibits labeling that is permitted under federal law. But it is *also* appropriate when a state law prohibits labeling that is ***not prohibited*** under federal law").

The same result is warranted here. Publix's cough drops fully comply with the FDA Monograph for antitussives, and Plaintiff makes no allegation to the contrary. Instead, Plaintiff alleges that the labeling is not compliant with the food regulations in ***21 C.F.R. § 101.22(i)(1)(i)*** because "if a product contains a *de minimus*, negligible amount of lemon ingredient that is insufficient to characterize it, ... the front label would be required to state, 'Natural Lemon Flavored Cough Drops." Compl. ¶ 13. This argument fails for at least two reasons. First, 21 C.F.R. § 101 addresses ***food***, not OTC antitussives like Publix's cough drops, and thus whether the cough drops comply with that regulation is legally irrelevant. Second, all labeling requirements for OTC antitussives are included in the Monograph, *see* 21 C.F.R. § 341.74, and, as noted above, FDA has not chosen to incorporate 21 C.F.R. § 101 into this Monograph and its labeling requirements. *See Rulemaking History for OTC Antitussive Drug Products.*

Accordingly, Plaintiff's state-law claims, which seek to impose new, additional labeling requirements not required by or identical to federal law set forth in the Monograph—*e.g.*, a state-law requirement that the label can include the word "lemon" (and related images) only if the cough drops contain a non-negligible amount of real lemon as an ingredient—are preempted. *See Amara*, No. 8:22-cv-367-VMC-JSS, 2022 WL 3357575, at *3–4 (finding plaintiff's state-law claims seeking to remove "non-drowsy" from the label effectively imposed additional regulations not contained in the applicable FDA monograph and were thus preempted); *see also Hi-Tech Pharms.*, 910 F.3d at 1195 (finding plaintiff's state-law claim "preempted because it would impose liability for labeling that does not violate the Food, Drug, and Cosmetic Act or the regulations that carry it into effect"). As such, Plaintiff's state-law claims must be dismissed with prejudice.

## III.   PLAINTIFF FAILS TO STATE ANY VIABLE CAUSES OF ACTION.

### A.   The Product's Label Was Not Deceptive, and It Complied With Federal Regulations, Thereby Precluding Liability Under the FDUTPA.

#### 1.   No Reasonable Person Would Read the Label in the Deceptive Manner Plaintiff Does.

FDUTPA claims have three elements: a deceptive act or unfair practice; causation; and actual damages. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). The FDUTPA claim here is based on alleged deception. *See* Compl. ¶¶ 86–91. "[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the

circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007). The standard requires "probable, not possible, deception...likely to cause injury to a reasonable relying consumer." *Id.* (quoting *Millennium Comm. & Fulfillment, Inc. v. Dept. of Legal Affairs*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000)). Thus, "an objective test is used to determine whether the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." *Piescik v. CVS Pharmacy, Inc.*, 576 F. Supp. 3d 1125, 1132 (S.D. Fla. 2021) (internal quotation marks omitted).

Because determining deception is dependent on reasonable consumers' likelihood of being misled by representations, "context is crucial." *Brown v. Kellogg Sales Co.*, No. 1:20-CV-7283-ALC, 2022 WL 992627, at *3 (S.D.N.Y. Mar. 31, 2022) (citing *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018)) (internal citations omitted). The Court must consider all of the information available to Plaintiff in deciding whether a reasonable consumer in his shoes could have been misled by the totality of the information provided. In context, disclaimers and additional information can cure statements that might potentially mislead a reasonable consumer. Standalone images or words evoking foods do not automatically equate to assurances of particular ingredients in particular amounts. *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 244–45 (S.D.N.Y. 2021) ("vanilla" without additional modifiers is merely a claim about flavor, not ingredients); *Brown*, 2022 WL 992627, at *6 (image of halved strawberry and "Strawberry" in title indicated flavor). This is especially true when nutritional panels and ingredient lists on product labels can cure any potential consumer confusion on nutritional value or ingredient sources. *See, e.g.*, *Brown*, 2022 WL 992627, at *6 (finding nutritional panel could cure consumer confusion); *Russett v. Kellogg Sales Co.*, No. 7:21-CV-08572 (NSR), 2022 WL 2789837, at *3–4 (S.D.N.Y. July 15, 2022) (same); *Angeles v. Nestle USA, Inc.*, No. 21-CV-7255 (RA), 2022 WL 4626916, at *4 (S.D.N.Y. Sept. 30, 2022) (finding phrase "contains no juice" curative); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 164–65 (S.D.N.Y. 2021) (finding nutritional panel would clarify ingredient sources); *Steinberg v. Icelandic Provisions, Inc.*, No. 21-CV-05568-EMC, 2022 WL 220641, at *7 (N.D. Cal. Jan. 25, 2022) (finding disclaimers on back of package clarified confusion).

Applying that law here, Plaintiff's FDUTPA claim fails at the pleading stage because the Complaint's facts do not make it plausible that a consumer acting reasonably in the circumstances would believe, based on the totality of the label, that these cough drops contained a non-*de minimus*

amount of real lemon as an ingredient. The front label did not state or assure that the cough drops included lemon as an ingredient. Rather, the front label merely indicated the cough drops were "honey-lemon" and included "pictures of a yellow-colored lozenge and a halved lemon." Compl. ¶ 2. That informed Plaintiff of the cough drops' *flavor*, and no reasonable consumer reading this label would leap to the conclusion that it was a representation of the product's *ingredients*. After all, the product label includes a list of inactive ingredients, Compl. ¶ 9, none of which is lemon:

**Inactive Ingredients:** Beta carotene (color), cornstarch, corn syrup, eucalyptus oil, glycerin, honey, medium chain triglycerides, natural and artificial flavors, soybean oil, sucrose, and water.

Plaintiff does not—and cannot—point to any affirmative representations by Publix that the cough drops contain a non-*de minimus* amount of lemons. Critically, there is no statement on the label, like "made with real lemons," that would lead a reasonable consumer to believe lemons were in this product even though not on the ingredient list. Reasonable consumers in Plaintiff's shoes would instead interpret the "honey-lemon" descriptor and images on the label as branding elements indicating flavor, not ingredients. Numerous courts around the country have reached this same conclusion in dismissing similarly-deficient claims of supposed label deception. *See Brown*, 2022 WL 992627, at *4–5 (finding images of strawberries and red filling coupled with "strawberry" on the front of the package were objectively not deceptive and instead simply indicated a flavor); *Russett*, 2022 WL 2789837, at *3–4 (same); *Angeles*, 2022 WL 4626916, at *3–4 (yellow tint on packaging, images of lemons, and words "lemon and lemon zest" were indications of flavor not misrepresentations of ingredients); *Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562, 584 (S.D.N.Y. 2021) (finding "vanilla" was used to describe flavor, not presence of vanilla); *Steinberg*, 2022 WL 220641, at *4–6 (finding images of Iceland, company advertising, and indications that yogurt was "Traditional Icelandic Skyr" were not deceptive to a reasonable consumer as to yogurt's place of manufacture).

Just as the image of a strawberry on pop tarts or the yellow tint of a lemon-flavored water is not indicative of ingredients, especially when not on the ingredient list, neither is a singular use of a sliced lemon or the golden tint of the lozenge. *See, e.g.*, *Brown*, 2022 WL 992627, at *4; *Russett*, 2022 WL 2789837, at *3–4; *Angeles*, 2022 WL 4626916, at *3–4. Similarly, using the

adjective "honey-lemon" to modify "menthol cough-suppressant/oral anesthetic cough drops" is an indicator of a "honey-lemon" *flavor*—just as "vanilla," presented as "vanilla chai tea," is an indicator of flavor. *See Cosgrove*, 520 F. Supp. 3d at 581 ("[T]he term ["vanilla"] appears to describe a flavor more than an ingredient"). This is further supported by the fact that "lemon" does not appear as a standalone word; rather, the label states "honey-lemon," indicating a flavor evocative of both honey and lemons.[5] The fact that there is no species of lemon known as a "honey lemon" or "honey-lemon"[6] likewise supports this interpretation of the phrase by a consumer acting reasonably in the circumstances as a signal of flavor rather than assurance of contained ingredients.

As noted, any possible confusion about the meaning of "honey-lemon" on the front label is dispelled by a perusal of the back label. Just as with the front label, the back contains no affirmative representations of lemon ingredients. Critically, Plaintiff admits that the list of inactive ingredients on the label *lacks any mention of lemon*. Compl. ¶¶ 9–10. Plaintiff correctly notes that the ingredient list includes "natural and artificial flavors," *id.*, which is entirely consistent with the discussion above that "honey-lemon" was an indication of *flavor*, not ingredients. After all, the listing of "natural and artificial *flavors*" as opposed to "lemon" or other lemon derivatives both reaffirms that the "lemon" in "honey-lemon" was an indication of flavor and again serves to put Plaintiff on notice that the product does not contain more than a negligible amount of lemon derivatives. Indeed, the very absence of an ingredient sought in the list should put a reasonable consumer on notice that said ingredient is not contained therein. *See, e.g.*, *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (lack of truffle on list of ingredients in combination with other contextual cues (low price of product, use of "truffle flavored" description, and perishability of truffles) would lead reasonable consumer to know truffles were not source of

---

[5] Hyphens are frequently used to create novel or combination descriptors. *See e.g.* Compl. ¶ 7 ("yellow-colored"), ¶ 50 ("well-known"), ¶ 54 ("industry-wide") and ¶ 114 ("extra-labeling"). For example, the phrases "a man-eating shark" or "a right-hand man" connote completely different meanings from "a man eating shark" or "a right hand man" (presumably a man with only a right hand or who is a right hand).

[6] *See* Patrick O'Hare, *30 Different Types of Lemons (All Lemon Varieties)*, PLANTSNAP (Dec. 16, 2020), https://www.plantsnap.com/plantblog/types-of-lemons/ (listing 30 lemon varieties, none called "honey lemons"); BALCONY GARDEN WEB, *Different Types of Lemons with Pictures | Best Lemon Varieties*, https://balconygardenweb.com/different-types-of-lemons-with-pictures-best-varieties/ (same with 22 lemon varieties) (last accessed Jan. 7, 2023).; LEAFY PLACE, *Types of Lemons: Lemon Varieties with Pictures From Around the World*, https://leafyplace.com/types-of-lemons/ (same with at least 18 lemon varieties discussed) (last accessed Jan. 7, 2023).

flavor); *c.f. Steinberg*, 2022 WL 220641 at *7 ("Furthermore, because there are no misrepresentations on the Product's front label, the explicit disclosure…on the Product's back label-Batavia, NY-is fatal [to plaintiff's case]"); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 161–65 (S.D.N.Y. 2021) ("vanilla" was an indicator of flavor and therefore not misleading; where there was confusion, the ingredient list was curative); *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 245 (S.D.N.Y. 2021) (finding "vanilla bean" ultimately described flavor not ingredients). That is particularly true here, where the ingredient list includes "honey" but not "lemon." No consumer acting reasonably in these circumstances would possibly—much less, probably—be deceived into thinking the product nevertheless had real lemon as an ingredient.

Because no reasonable consumer would interpret the label of this product in the result-driven, deceptive manner Plaintiff alleges, the Court should dismiss Plaintiff's FDUTPA claim with prejudice. *E.g.*, *Piescik*, 576 F. Supp. 3d at 1132 (finding plaintiff failed to plead a "deceptive act" because reasonable consumers would not interpret the label in the same way plaintiff did); *Kurimski v. Shell Oil Co.*, 570 F. Supp. 3d 1228, 1244 (S.D. Fla. 2021) (dismissing FDUTPA claim where price signage would not mislead a reasonable consumer, and noting that "where [p]laintiffs base deceptive advertising claims on unreasonable or fanciful interpretations o[f] labels or other advertising, dismissal on the pleadings may well be justified").

> 2. <u>The FDUTPA Claim Is Precluded by the Statute's Safe Harbor Provision.</u>

Plaintiff's allegations are not actionable under the FDUTPA because the statute has a Safe Harbor Provision that precludes claims predicated on "[a]n act or practice required or specifically permitted by federal or state law." Fla. Stat. § 501.212(1); *accord Kuenzig v. Hormel Foods Corp.*, 505 F. App'x. 937, 939 (11th Cir. 2013); *Dep't of Legal Affairs v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005) (explaining that Safe Harbor Provision focuses on whether "specific federal or state law affirmatively authorized [the defendant] to engage in the conduct").

As discussed above, federal law affirmatively authorized the information on this product's label. Such antitussive drug products are subject to federal labeling rules in an FDA Monograph, and there is no allegation—nor could there be—that these cough drops did not fully comply with the Monograph, including its labeling requirements. Plaintiff's allegations concerning FDA regulations for different products are, as noted above, legally irrelevant. Because federal law authorized the information and formatting of the product's label, and did not prohibit the use of descriptors for flavoring on the label, like "honey-lemon," the Safe Harbor Provision precludes

liability under the FDUTPA. *See Phelps v. Hormel Foods Corp.*, 244 F. Supp. 3d 1312, 1319 (S.D. Fla. 2017) (dismissing claims pursuant to Safe Harbor Provision because a federal agency "reviews and approves product labels for commercial use"; thus, "they are specifically permitted by federal law").[7]

**B.**     **The Other State Consumer Fraud Claims Fail.**

Plaintiff makes no attempt to allege the elements of the non-Florida consumer protection statutes he claims Publix has violated, or even identify the specific statutes allegedly violated. Plaintiff also does not incorporate any other allegations of the Complaint into this claim. Publix is left to guess as to how it supposedly violated the unidentified statutes. This vague, insufficiently-pled claim should be dismissed. *See Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993) ("[A] court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for her.").

Regardless, Plaintiff, a Florida citizen who allegedly purchased the product in Florida, *see* Compl. ¶¶ 33, 63, cannot bring claims under the consumer protection acts of other States. *Renzi v. Demilec (USA) LLC*, No. 12-80516, 2013 WL 6410708, at * 8 (S.D. Fla. Dec. 9, 2013) (stating "'[p]laintiffs may only assert a state statutory claim if a named plaintiff resides in that state,'" and holding plaintiff—a Florida resident—lacked standing under other state consumer protection acts); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371–72 (S.D. Fla. 2001) (dismissing claims under state statutes where named plaintiff could not allege injury in those states); *see also Valiente*, 2022 U.S. Dist. LEXIS 222409, at *26–27 (dismissing similarly-pled claim under non-Florida consumer protection statutes for lack of standing since plaintiff purchased product only in Florida). That a member of the proposed classes may have standing under another State's statute does not bestow Plaintiff with the ability to assert a claim under that statute. *Id.*; *Knowles v. McDonald's USA, LLC*, No. 16-81657, 2018 WL 8244277, at *23 (S.D. Fla. Feb. 9,

---

[7] *See also Prohias v. AstraZeneca Pharm., L.P.*, 958 So. 2d 1054, 1056 (Fla. 3d DCA 2007) (affirming dismissal because promotion and advertising of drug were "specifically permitted" by federal law); *Hauser v. Steward Melbourne Hosp., Inc.*, No. 6:19-cv-1150-Orl-41EJK, 2020 WL 917259, at *5 (M.D. Fla. Feb. 11, 2020) (finding "claim fall[s] squarely within FDUTPA's Safe Harbor Provision" since federal law regulated disclosure requirements); *Kuenzig v. Kraft Glob. Foods, Inc.*, No. 8:11–cv–838–T–24, 2012 WL 366916, at *3 (M.D. Fla. Feb. 3, 2012) (dismissing because defendant complied with federal regulations); *Brett v. Toyota Motor Sales, U.S.A., Inc.*, No. 6:08-cv-1168-Orl-28GJK, 2008 WL 4329876, at *7 (M.D. Fla. Sept. 15, 2008) (dismissing because disclosure requirements authorized by federal agency).

2018) (concluding a plaintiff "cannot rely upon the circumstances of unnamed plaintiffs to assert a claim and the injury that gives rise to that claim").

      **C.**    **The Express Warranty, Implied Warranty, and MMWA Claims Fail.**

     To state a claim for breach of warranty, a complaint must allege: (1) the sale of goods; (2) the type of warranty created; (3) breach of the warranty; (4) notice to the seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach. *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1340–41 (S.D. Fla. 2011); *Durham-Bush, Inc. v. Thermo-Air Servs., Inc.*, 351 So. 2d 351 (Fla. 4th DCA 1977).

        **1.**    <u>Plaintiff Did Not Provide the Required Pre-Suit Notice.</u>

     Plaintiff's state-law claims for breach of express and implied warranty are subject to Florida's UCC. *See* Fla. Stat. § 672.102. The Florida UCC unequivocally provides that a "buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach *or be barred from any remedy*." Fla. Stat. § 672.607 (emphasis added); *see also Garcia v. Clarins USA, Inc.*, 14CV21249HUCKOTAZORE, 2014 WL 11997812, at *7 (S.D. Fla. Sep. 5, 2014) ("Florida law requires Plaintiff to give notice of the breach to the seller.") (citing *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1340 (S.D. Fla. 2011)). The statute and case law are clear: the advance notice requirement is "a precondition of imposing liability." *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1323 (S.D. Fla. 2020) (quoting *Gen. Matters, Inc. v. Paramount Canning Co.*, 382 So. 2d 1262, 1264 (Fla. 2d DCA 1980)). "The buyer bears the burden of showing that he gave the required notice within a reasonable time." *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1102 (11th Cir. 1983); *accord Toca*, 430 F. Supp. 3d at 1323. And "[b]ecause the point of the notice requirement is to allow the warrantor an opportunity to cure the problem rather than defend a lawsuit, … *pre-suit* notice is required." *Valiente*, 2022 U.S. Dist. LEXIS 222409, at *48 (cleaned up).

     Here, Plaintiff's Complaint offers only the boilerplate, vague allegation that he "provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees." Compl. ¶ 105. That conclusory allegation, which lacks supporting facts and equivocates on whether Plaintiff actually gave pre-suit notice, is insufficient to establish that Publix received the required pre-suit notice. In fact, the next paragraph of the Complaint demonstrates that Plaintiff did *not* give pre-suit notice by alleging "Plaintiff *provides notice* to Defendant that it breached the express and implied warranties associated with the Product." *Id.* ¶ 106 (emphasis added).

Plaintiffs' warranty claims must be dismissed for this reason alone. *See, e.g.*, *Valiente*, 2022 U.S. Dist. LEXIS 222409, at *49 (dismissing identically-pled express warranty claim for lack of pre-suit notice); *N. Brevard Cnty. Hosp. Dist. v. Metrus Energy-Atlantis, LLC,* No. 6:20-CV-547-ORL37EJK, 2020 WL 10459467, at *4 (M.D. Fla. July 10, 2020) (warranty claims dismissed for lack of pre-suit notice); *Sclar v. OsteoMed, L.P.*, No. 17-23247-CIV, 2018 WL 559137, at *1–2 (S.D. Fla. Jan. 24, 2018) (claim for breach of warranty dismissed); *Armadillo Distribution Enters. v. Hai Yun Musical Instruments Mfr. Co., Ltd.*, 142 F. Supp. 3d 1245, 1254 (M.D. Fla. 2015) (implied warranty claims barred for lack of pre-suit notice); *Garcia v. Clarins USA, Inc.*, No. 14-CV-21249-HUCK/OTAZO-REYES, 2014 WL 11997812, at *7 (S.D. Fla. Sep. 5, 2014) (dismissing express warranty claim for failure to allege notice); *Arcure v. Kellogg Co.*, 2:10-CV-192-FTM-36-SPC, 2011 WL 13294631, at *5 (M.D. Fla. Mar. 29, 2011) (dismissing express and implied warranty claims, including for failing to allege that the statutorily-required notice was provided).[8]

       2.      <u>Publix's Label Did Not Warrant that the Product Contained Real Lemon.</u>

Plaintiff alleges that Publix expressly warranted the product "contained a non-negligible amount of lemon ingredients." Compl. ¶ 96. This claim fails for the simple reason that the Complaint points to ***no specific language*** from Publix—located either on the product's label or elsewhere—that guarantees this product contains lemon as an ingredient. As discussed above, no reasonable person would believe that the descriptor "honey-lemon" and images of a lemon and yellow cough drop constituted a warranty that the product included a non-negligible amount of lemon (as opposed to being honey-lemon flavored), especially when lemon is not listed as an ingredient. Plaintiff's inability to identify a specific statement by Publix expressly warranting that the product includes real lemon requires dismissal of his express warranty claim. *E.g.*, *Pavletic v. Caterpillar, Inc.*, No. 11-60484-CIV, 2011 WL 13217295, at *2 (S.D. Fla. Dec. 21, 2011) (dismissing express warranty claim for failing to identify the warranty that defendant allegedly made and breached).

---

[8] Plaintiff's failure to give Publix pre-suit notice (and an opportunity to cure) is significant and material in light of the Publix Guarantee, discussed above, that "the full purchase price will be cheerfully refunded immediately upon request." *See* note 3, *supra.*

3.      Publix Did Not Breach Any Implied Warranties.

When the seller is a merchant, every contract for the sale of goods includes an implied warranty "that the goods shall be merchantable." Fla. Stat. § 672.314. "Most commonly, the goods must '[p]ass without objection in the trade,' *id*. § 672.314(2)(a), and be 'fit for the ordinary purposes for which such goods are used,' *id*. § 672.314(2)(c)." *Toca*, 430 F. Supp. 3d at 1325. The product here is a cough suppressant and oral anesthetic, *see* Compl. ¶ 1, and Plaintiff never claims the product did not work for the ordinary purposes of suppressing coughs and aestheticizing his mouth/throat. Thus, even if Plaintiff were correct (he is not) that the statement "honey-lemon" falsely implies that the product includes real lemon, that does not establish a breach of the implied warranty of merchantability because the Complaint does not allege that the lack of real lemon ingredients had any impact on the product's ordinary purposes of suppressing coughs and aestheticizing the mouth/throat. *See Business Radio, Inc. v. Relm Wireless Corp.*, 373 F. Supp. 2d 1317, 1322 (M.D. Fla. 2005) (dismissing merchantability claim where plaintiff received what it paid for and product worked as intended).

As for the particular purpose claim, "[a] 'particular purpose' differs from the ordinary purpose in that it envisages a specific use by the buyer which is peculiar to the nature of its business" and known by the seller. *Zoom Tan, LLC v. Heartland Tanning, Inc.*, No. 2:12-cv-684, 2013 WL 5720140, at *9 (M.D. Fla. Oct. 21, 2013). Here, Plaintiff does not allege he purchased the product for anything other than the ordinary purposes of suppressing coughs and aestheticizing his mouth/throat. More importantly, he does not allege that Publix was aware of some other (unidentified) particular purpose for which he bought the product. As such, Plaintiff fails to state a claim for breach of implied warranty of fitness for a particular purpose. *Id*. at *9–10.

4.      Plaintiff's MMWA Claim Also Fails for Multiple Reasons.

Because Plaintiff's state-law warranty claims fail, so too does his claim under the MMWA. *See Valiente*, 2022 U.S. Dist. LEXIS 222409, at *51 (dismissing MMWA claim for failure of state-law warranty claims); *Amara*, 2022 WL 3357575, at *5 ("[A] breach of warranty claim under the MMWA is dependent upon a viable underlying state breach of warranty claim."); *Nuwer v. FCA US LLC*, 552 F. Supp. 3d 1344, 1362 (S.D. Fla. 2021) ("A MMWA claim can only survive if the plaintiff pleads a valid state law warranty claim."); *Toca*, 430 F. Supp. 3d at 1325 (same); *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1304 (S.D. Fla. 2017) (same); *Hill v. Hoover Co.*, 889 F. Supp. 2d 1259, 1266 (N.D. Fla. 2012) (same).

The MMWA claim also fails because that statute is "inapplicable to any written warranty the making or content of which is otherwise governed by Federal law." 15 U.S.C. § 2311(d). "Through the FDCA, the FDA extensively regulates the labeling, marketing, and sale of all over-the-counter medications.… As such, the MMWA is inapplicable to any alleged express or implied warranty claims on [such products]." *Hernandez v. Johnson & Johnson Consumer, Inc.*, No. 3:19-cv-15679, 2020 WL 2537633, at *13–14 (D.N.J. May 19, 2020) (citations omitted). Accordingly, Plaintiff is barred from bringing an MMWA claim. *In re Zantac (Ranitidine) Prods. Liab. Litig.* 510 F. Supp. 3d 1141, 1173–74 (S.D. Fla. 2020) (dismissing MMWA claim and explaining that "federal courts have held that the MMWA is inapplicable to both express-warranty and implied-warranty claims for products with FDA-regulated labeling"). Additionally, Plaintiff fails to meet the requirement under the MMWA that the amount in controversy for any individual claim exceeds $25, 15 U.S.C. § 2310(d)(3)(A), since he claims he purchased the product for approximately $1.79, Compl. ¶ 30. The Court should dismiss the MMWA claim for each of these independent reasons, as well.

### D.    The Negligent Misrepresentation and Fraud Claims Fail.

#### 1.    The Economic Loss Rule Bars the Claims.

Florida's economic loss rule prohibits tort claims, including for fraudulent and negligent misrepresentation, concerning products when the only injury is economic loss. *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 407 (Fla. 2013). It is well settled that "Florida's economic loss rule applies to all…tort claims" that "pertain only to the quality of [defendant's] products" and "allege only economic harm arising from the claims." *Melton*, 243 F. Supp. 3d at 1302 (dismissing misrepresentation and other tort claims). Misrepresentation claims seeking economic damages for a product's failure to comply with a warranty, with no claim of personal injury or damage to other property, are, in substance, products-liability claims subject to dismissal under the economic loss rule.[9]

Here, Plaintiff does not allege he sustained personal injuries or damage to other property. He alleges only an economic loss. Therefore, the negligent misrepresentation and fraud claims

---

[9] *E.g.*, *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1336–38 (S.D. Fla. 2013) (finding misrepresentation claim barred where allegations were the same as those for breach of warranty); *Burns v. Winnebago Indus., Inc.*, No. 8:13-cv-1427, 2013 WL 4437246, at **7–9 (M.D. Fla. Aug. 16, 2013) (applying economic loss rule because "Plaintiff's claims are simply product liability claims re-titled as claims for negligent misrepresentation and fraudulent concealment").

should be dismissed pursuant to the economic loss rule. *E.g.*, *Valiente*, 2022 U.S. Dist. LEXIS 222409, at \*57–58 (dismissing similarly-pled negligent misrepresentation and fraud claims as barred by the economic loss rule).

2.     <u>The Fraud Claim Does Not Plead the Essential Elements.</u>

Neither the negligent misrepresentation nor the fraud claim incorporate any preceding paragraphs of the Complaint. This is particularly fatal to the fraud claim because it notably fails to plead that Plaintiff relied upon the alleged representations and suffered damages therefrom, essential elements of a Florida fraud claim. *Omnipol*, 32 F.4th at 1307 (stating elements of Florida fraud claim, which include "the consequent injury by the party acting in reliance on the representation") (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)). The deficiently-pled claim should be dismissed for that additional reason.

**E.     Plaintiff Does Not Plead An Actionable Unjust Enrichment Claim.**

A claim for unjust enrichment is reserved for when, even though the defendant committed no misconduct, it would still "be inequitable for the defendant to retain [a] benefit without paying for it." *Day v. Sarasota Doctors Hosp., Inc.*, No. 8:19-cv-1522-T-33TGW, 2020 WL 7390153, at \*7 (M.D. Fla. Feb 7, 2020); *see also State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013) (stating unjust enrichment claims exist "to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity"). "Courts routinely dismiss unjust-enrichment claims when that plaintiff 'fail[s] to plausibly plead that the circumstances are such that it would be inequitable for the defendant to retain the benefit.'" *Id.* (quoting *OJ Commerce, LLC v. Ashley Furniture Indus., Inc.*, 359 F. Supp. 3d 1163, 1176 (S.D. Fla. 2018)).

Plaintiff's single-paragraph unjust enrichment claim is deficiently pled. It alleges no facts, does not incorporate any other prior allegations, and leaves Publix to fill in the blanks. *See Valiente*, 2022 U.S. Dist. LEXIS 222409, at \*62–63 (dismissing identical unjust enrichment claim for inadequate pleading). Regardless, there is no inequity because, as discussed above, Plaintiff does not allege he failed to receive the benefit of his bargain. *See Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1102 (11th Cir. 2021) (holding unjust enrichment claim failed where plaintiff received what was bargained for). Plaintiff paid for an antitussive product and does not allege that it failed to suppress his cough or aestheticize his mouth/throat.

Plaintiff's unjust enrichment claim also fails because it is an ***equitable*** claim that cannot be predicated on ***unlawful*** or ***wrongful*** conduct. *See State of Fla., Office of Atty. Gen., Dep't of Legal Affairs v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1309 (S.D. Fla. 2005) (dismissing unjust enrichment claim premised on statutory violations because "the law of unjust enrichment is concerned solely with enrichments that are unjust independently of [alleged] wrongs"); *accord Electrostim Med. Servs., Inc. v. Lindsey*, No 8:11-cv-2467-T-33TBM, 2012 WL 1560647, at *4 (M.D. Fla. May 2, 2012); *AtroTel, Inc. v. Verizon Fla., LLC*, No. 8:11-cv-2224-TY-33TBM, 2012 WL 1581596, at *10 (M.D. Fla. May 4, 2012). Here, Plaintiff grounds his unjust enrichment claim on supposed misrepresentations, Compl. ¶ 123, the same alleged conduct upon which Plaintiff bases his legal claims for violations of consumer protection acts, warranties, and fraud. To the extent Plaintiff is entitled to any relief (he is not), it would be under those legal claims. Florida law does not permit Plaintiff to repackage those claims alleging legal wrongs as equitable unjust enrichment claims. *See Prohias v. Pfizer Inc.*, 490 F. Supp. 2d 1228, 1237 (S.D. Fla. 2007) (dismissing unjust enrichment claim that sought "recovery for the exact same wrongful conduct as in their consumer fraud claim"); *see also Weaver v. Mateer & Harbert, P.A.*, No. 5:9-cv-514-Oc-34TBS, 2012 WL 3065362, at *11 (M.D. Fla. July 27, 2012) (dismissing unjust enrichment claim pled in the "alternative" because FDUTPA provided "an adequate legal remedy"); *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) (dismissing unjust enrichment claim "predicated on the same set of allegations supporting … claims under … FDUTPA").

## CONCLUSION

For the foregoing reasons, Publix respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.

Dated: January 17, 2023

Respectfully submitted,

*/s/Daniel B. Rogers*
Daniel B. Rogers (Florida Bar No. 195634)
E-Mail: drogers@shb.com
Danielle A. Greenberg (Florida Bar No.1038864)
E-mail: dgreenberg@shb.com
SHOOK, HARDY & BACON L.L.P.
201 South Biscayne Blvd., Suite 3200
Miami, Florida 33131
T: (305) 358-5171

Brian T. Guthrie (Florida Bar No. 84232)
E-Mail: bguthrie@shb.com
SHOOK, HARDY & BACON L.L.P.
100 North Tampa Street, Suite 2900
Tampa, Florida 33602
T: (813) 202-7100

**_Counsel for Defendant Publix Super Markets, Inc._**