United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Heriberto Valiente, individually and on behalf of all others similarly situated, Plaintiff, <br><br> v. <br><br> Publix Super Markets, Inc., Defendant. | Civil Action No. 22-22930-Civ-Scola |

### Order on Motion to Dismiss

This matter is before the Court on the Defendant Publix Super Markets, Inc.'s ("Publix") motion to dismiss the Plaintiff Heriberto Valiente's ("Valiente") amended class action complaint. (ECF No. 11.) Valiente has filed a response in opposition to Publix's motion (ECF No. 14), to which Publix has replied (ECF No. 15). Having reviewed the record, the parties' briefs, and the relevant legal authorities, the Court **grants** Publix's motion. (**Mot., ECF No. 11**.)

**1. Background**

This action arises from Valiente's dissatisfaction with Publix's honey-lemon cough drops. As set forth in Valiente's complaint,[1] Publix manufactures, markets, and sells the following honey-lemon, menthol-based lozenges:



(Am. Compl. ¶ 1, ECF No. 9.) "[O]n June 4, 2022, among other times[,]" Valiente purchased the cough drops, apparently attracted by the phrase

---

[1] This background is based on the allegations in Valiente's complaint.

"honey-lemon," the "pictures of these ingredients," and the statement "soothes sore throat[s]." (*Id.* ¶¶ 64–65.) From these representations, Valiente "believed" that the product "contained a non-negligible amount of lemon ingredients," and "expected" that the product's "soothing ability was due to its effect on bronchial passages." (*Id.* ¶¶ 67–70.) Valiente acknowledges that the product's "front label discloses [its] active ingredient through the statement, 'Menthol Cough Suppressant/Oral Anesthetic,'" and notes that the product's "ingredient list . . . does not list any lemon ingredient." (*Id.* ¶¶ 14, 16.) However, he posits that the product's labeling is nonetheless misleading to consumers like himself in two separate ways: *i.e.*, by suggesting (i) that it contains "a non-*de minimis* amount of lemon ingredients," and (ii) that it is capable of "sooth[ing] bronchial passages[.]" (*See id.* ¶¶ 15, 20, 22, 78.)

Valiente asserts that he and his proposed class of customers have been damaged because, had they "known the truth, they would not have bought the [p]roduct or would have paid less for it." (*Id.* ¶¶ 30–31.) Specifically, he maintains that the label's "false and misleading representations" allow Publix to sell the product at the "premium price" of "no less than $1.79 per 30 lozenges," which is "higher than it would be sold for absent the misleading representations and omissions." (*Id.* ¶¶ 29, 32.) Notwithstanding this, Valiente "intends to, seeks to, and will purchase the [p]roduct again[,]" once he is "assur[ed] [that] the [p]roduct's representations are consistent with its abilities, attributes, and/or composition." (*Id.* ¶ 77.)

Based on these allegations, Valientes seeks both damages and injunctive relief, bringing six claims against Publix: violation of Florida's Deceptive and Unfair Trade Practices Act; violation of the consumer fraud acts of the states encompassed by the proposed multi-state class (*i.e.*, Alabama, Georgia, North Carolina, South Carolina, Tennessee, and Virginia); breaches of express warranty, implied warranty of merchantability, and the Magnuson Moss Warranty Act; negligent misrepresentation; fraud; and unjust enrichment. (*Id.* ¶¶ 88–124.) In response, Publix moves to dismiss Valiente's amended complaint on several grounds: lack of Article III standing; preemption; and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Mot., ECF No. 11.)

As explained below, the Court grants Publix's motion and dismisses the complaint because it finds that Valiente has failed to establish Article III standing. Because the Court finds that Valiente lacks standing, it declines to address Publix's additional arguments regarding preemption and Valiente's failure to state a claim for each cause of action.

## 2. Legal Standard

Because the question of Article III standing implicates subject matter jurisdiction, it must be addressed as a threshold matter prior to the merits of any underlying claims. *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1250 (11th Cir. 2015). Article III of the Constitution grants federal courts judicial power to decide only actual "Cases" and "Controversies." U.S. Const. Art. III § 2. The doctrine of standing is a "core component" of this fundamental limitation that "determin[es] the power of the court to entertain the suit." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1264-65 (11th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims, and the court is powerless to continue." *Id.* (citing *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006)).

Standing under Article III consists of three elements: the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016). To establish the first element, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548.

## 3. Discussion

Publix argues that Valiente lacks standing to pursue either damages or injunctive relief. Because "standing is not dispensed in gross[,]" and "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)[,]" the Court addresses each point in turn. *See TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2208, 210 L. Ed. 2d 568 (2021).

### A. Article III Standing for Monetary Damages

First, Publix attacks the sufficiency of Valiente's allegations as to the first element of Article III standing, arguing that he fails to allege facts demonstrating he suffered any injury-in-fact. (Mot. 4–5, ECF No. 11.) Even though Valiente attempts to allege an economic injury, Publix argues, he fails to set forth facts to make plausible his conclusion that the cough drops were

worth less than what he paid due to Publix's allegedly-misleading packaging. And, Publix notes, Valiente specifically fails to explain why he has incurred an actual economic injury-in-fact in light of Publix's unconditional money-back guarantee. (*Id.* at 5 n.4.) In his response, Valiente argues that he has sufficiently established an injury by alleging that he paid a price premium for the product due to the misleading labeling, which is all he was required to plead. (Resp. 7–8, ECF No. 14.) The Court does not agree.

To begin, Valiente's response completely ignores Publix's point as to how he could have incurred an actual economic injury in light of the company's money-back guarantee. Critically, this Court has previously found that a customer lacked Article III standing to sue a retailer based on an allegedly misrepresented product where the company, like Publix, had provided the customer with an unconditional money-back guarantee. *See Hardy v. Bed Bath & Beyond, Inc.*, Civil Action No. 17-22315-Civ, 2018 U.S. Dist. LEXIS 38948 (S.D. Fla. Mar. 9, 2018) (Scola, J.). In *Hardy*, the plaintiff alleged that she had purchased pillowcases from the defendant, Bed Bath & Beyond, Inc., that were represented to contain 100 percent pima cotton, but in fact contained only 2 percent pima cotton. *Id.* at *3. In addition, much like Valiente here, she contended that she suffered damages as a result of the misrepresentation because "she did not receive the premium product she thought she was purchasing[,] but instead received something of inferior quality and therefore did not obtain the benefit of her bargain." *Id.* The plaintiff, however, had also attached to her complaint billing documentation associated with her purchase, which indicated that the defendant offered a full refund, with no restrictions, to unsatisfied customers. *Id.* at *4. In concluding that the plaintiff had not cognizably alleged an injury-in-act, this Court explained that the only injury the plaintiff alleged "was essentially mooted" by the fact that she could have received a full refund for her purchase. *Id.* at *5.

Like the defendant in *Hardy*, Publix offers customers a full refund for items with which they're unsatisfied, no questions asked. Although Valiente's amended complaint only provides portions of the label for the honey-lemon cough drops, Publix's motion provides an image of the full package. The guarantee, which is clearly printed on the back, states: "PUBLIX GUARANTEE: COMPLETE SATISFACTION OR YOUR MONEY BACK." (Mot. 1, ECF No. 11.)[2]

---

[2] The guarantee is also available on Publix's website. *See* Publix Policies / Publix Guarantee, https://www.publix.com/pages/policies/publix-guarantee (last accessed May 22, 2023) ("We will never knowingly disappoint you. If for any reason your purchase does not give you complete satisfaction, the full purchase price will be cheerfully refunded immediately upon request."). Moreover, "[b]ecause the Court's authority to hear the case is at issue in a Rule 12(b)(1) motion, the Court is free to weigh evidence outside the complaint." *Yachera v.*

Valiente does not address Publix's offer either in his amended complaint or in his response to Publix's motion to dismiss: for example, he does not state that he never in fact received a refund for the cough drops, that he attempted to return the product for a refund and that Publix refused, or even that he was unaware of the possibility for a refund. Accordingly, as in *Hardy*, the Court concludes that the only injury Valiente actually alleges has essentially been mooted by Publix's money-back guarantee. *Id.* at *6; *see also Barnett v. Fitness Int'l, LLC*, No. 20-60658-CIV-DIMITROULEAS, 2020 U.S. Dist. LEXIS 171460, at *13 (S.D. Fla. Sep. 17, 2020) (Dimitrouleas, J.) (The plaintiff "lack[ed] Article III standing because his alleged injury - the failure to refund his March 2020 membership fees, was fully redressed by [the defendant's] unconditional, direct refund of his March 2020 membership fees on April 27, 2020, prior to [the plaintiff] filing suit on April 29, 2020.").

Moreover, putting aside the fact that Valiente could receive (or, potentially, has received) a full refund from Publix for his purchases of the cough drops, the Court still concludes that Valiente fails to plausibly allege "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016). Valiente does not assert that Publix's honey-lemon cough drops caused him any sort of harm *other than* the economic loss allegedly resulting from the product's misleading advertisements. In other words, Valiente's only alleged injury is based on the claim that "[h]ad [he] and proposed class members known the truth, they would not have bought the [p]roduct or would have paid less for it." (Am. Compl. ¶ 1, ECF No. 9.) In his response to Publix's motion to dismiss, Valiente argues that this "price premium" theory is all he is required to plead to sufficiently allege an injury-in-fact. (Resp. 8, ECF No. 14.) Other than Valiente's conclusory allegations to the effect that the cough drops are being sold at a premium price, however, the complaint is devoid of any factual support for the idea that they are, in fact, worth less than the stated price of "$1.79." (Am. Compl. ¶ 32, ECF No. 9.) And the Court does not agree that Valiente's mere allegation of having paid a price premium due to the purportedly misleading labeling suffices to allege an injury-in-fact.

An economic injury is generally considered "the epitome of 'concrete'" for purposes of Article III standing. *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019) (citing *Craig v. Boren*, 429 U.S. 190, 194-95, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976)). "A person experiences an economic

---

*Westminster Pharm., LLC*, 477 F. Supp. 3d 1251, 1262 (M.D. Fla. 2020) (citing *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 732 (11th Cir. 1982)).

injury when, as a result of a deceptive act or an unfair practice, he is deprived of the benefit of his bargain." *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) (citing *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986-87 (11th Cir. 2016)). Applying this principle, various courts have found that a plaintiff sufficiently plead an injury-in-fact for purposes of Article III standing based on allegations that she would not have bought a product, or would have paid less for it, if not for its allegedly deceptive label. *See Valiente v. Unilever United States, Inc.*, No. 22-21507-CIV, 2022 U.S. Dist. LEXIS 222409, at *13-16 (S.D. Fla. Dec. 8, 2022) (Lenard, J.) (compiling cases). However, as may be expected, other courts, including this one, have reached the oppisite conclusion on similar facts. *See Doss v. Gen. Mills, Inc.*, Civil Action No. 18-61924-Civ-Scola, 2019 U.S. Dist. LEXIS 100791, at *2 (S.D. Fla. June 14, 2019) (Scola, J.) (dismissing complaint for lack of Article III standing where plaintiff "argue[d], without any meaningful analysis, that she ha[d] sufficiently alleged an 'economic injury' because she would not have bought" the product but for the seller's deceptive practices in failing to disclose that they potentially contained a harmful substance), *aff'd*, 816 F. App'x 312 (11th Cir. 2020).

      The difference in outcomes between the foregoing cases generally may be explained by the extent to which a plaintiff's factual allegations effectively tie her alleged economic injury to the product's deceptive and misleading aspects. *Compare Rife v. Newell Brands, Inc.*, No. 20-80021-CIV, 2022 U.S. Dist. LEXIS 179248, at *24 (S.D. Fla. Sep. 30, 2022) (Altman, J.) (plaintiffs sufficiently alleged injury-in-fact where defendants had specifically touted pressure cookers' safety features, but defects in the cookers' lids made those representations false and misleading) *and Fitzpatrick v. Vital Pharm., Inc.*, No. 20-61121-CIV, 2021 U.S. Dist. LEXIS 106402, at *5 (S.D. Fla. June 4, 2021) (Singhal, J.) (plaintiffs switched to defendant's energy drink because the latter had advertised it as containing creatine, when, in fact, it did not contain creatine and, as a result, did not provide the metabolic health benefits expected) *with Wheeler v. Panini Am., Inc.*, Civil Action No. 22-00763 (BAH), 2022 U.S. Dist. LEXIS 208941, at *13-14 (D.D.C. Nov. 17, 2022) ("Apart from her wholly unsupported statement that the NPN lottery was the reason she purchased defendant's trading card box—apparently on more than one occasion—plaintiff . . . alleges no other facts to support her overpayment theory, so that argument fails.") *and Aleisa v. GOJO Indus.*, 538 F. Supp. 3d 764, 773 (N.D. Ohio 2021) ("Plaintiffs fail to allege any effect on the market price for the product at issue based on the allegedly false and misleading statements on which they base their claims. That is, crediting Plaintiffs' allegations, the consolidated amended complaint lacks factually supported, plausible allegations that any representation at issue resulted in payment of a

premium."); *see also Caudel v. Amazon.com, Inc.*, No. 20-cv-00848-KJM-KJN, 2021 U.S. Dist. LEXIS 199639, at *6 (E.D. Cal. Oct. 15, 2021) ("[I]n overpayment theory cases, the majority of courts have consistently found economic injury when the products contain an actual defect and are allegedly worth less than what the consumer paid.").

Here, Valiente does not allege that Publix's honey-lemon cough drops were defective, did not work as advertised, or otherwise were so flawed as to render them worthless. To the contrary, he suggests that he purchased the product on more than one occasion. (Am. Compl. ¶ 65, ECF No. 9.) And, in line with this, he affirms his intention and desire to purchase the cough drops again, conditioning his future purchase not on a modification of the product's ingredients or makeup, but only on an assurance that its "*representations*" coincide "with its abilities, attributes, and/or composition." (*Id.* ¶ 77.) Valiente posits that, as a result of Publix's representations, he and other Publix customers were deprived of the benefit of their bargain. However, unlike in most cases where courts have found overpayment allegations sufficient to confer Article III standing, Valiente fails to concretely tie the value of the cough drops to any of those purported representations.

Unlike in *Rife v. Newell Brands, Inc.*, for example, Valiente does not allege that the cough drops function in a manner or have attributes materially different from how they are marketed by Publix. *See* No. 20-80021-CIV, 2022 U.S. Dist. LEXIS 179248, at *24 (S.D. Fla. Sep. 30, 2022) (Altman, J.). Thus, while he says that consumers reading the product's label "may" be misled to believe that it contains an appreciable amount of lemon, and that its antitussive and cough suppressant effects are due to its ability to soothe bronchial passages (instead of sore throats), Valiente does not make the factual connection between these supposed beliefs and anything Publix represented. Indeed, he specifically acknowledges that the product's label discloses the cough drops' only active, and other, ingredients in multiple places. (Am. Compl. ¶¶ 14–16, ECF No. 9.)

Similarly, Valiente does not allege any facts by which one might measure the difference between the "premium price" he claims to have paid and the cough drops' fair market price. That is, he fails to tie any aspect of the product's label to the supposedly "premium price" of "$1.79." He does not allege, for instance, that cough drops without images of lemons sell for less than those with such images, and he does not compare the price of Publix's lemon cough-drops to products with similar ingredients but "non-misleading" packaging. Valiente does not even specifically allege that cough drops containing a non-*de minimis* amount of lemon have a higher fair market price. Instead, he provides only *general* allegations that consumers like himself may

understand Publix's representations in a way that allow it to sell the cough drops at a premium price.

In short, Valiente's allegations as to why he has been deprived of the benefit of his bargain all boil down to his subjective, personal expectations of what the cough drops purported to do. This is not enough to plausibly allege a concrete economic injury for purposes of Article III standing. *See, e.g.*, *Austin-Spearman v. AARP*, 119 F. Supp. 3d 1, 13 (D.D.C. 2015) ("But conclusory statements regarding a plaintiff's own beliefs and expectations are not sufficient to support an alleged 'overpayment' injury[.]"). "A plaintiff does not have standing to sue a defendant merely because of his or her buyer's remorse." *In re Zantac Prods. Liab. Litig.*, No. 2924, 2023 U.S. Dist. LEXIS 61325, at *189 (S.D. Fla. Apr. 6, 2023).

Put simply, Valiente has failed to allege an economic injury in fact based on his purchase of the honey-lemon cough drops, and he therefore lacks standing.

### B. Article III Standing for Injunctive Relief

Publix also argues that Valiente does not have standing to seek injunctive relief because his allegations that he is aware of the purported flaws with the product's label establish that he is not at risk of being deceived in the future. Valiente counters that he has alleged a sufficient likelihood of being affected by Publix's conduct in the future because its deceptive practices continue, thus affecting his ability to rely on the labeling and representations on both Publix's cough drops and other similar products.

First, because Valiente has failed to plausibly set forth the *only* injury alleged in his complaint—*i.e.*, monetary damages resulting from his purported overpayment for the cough drops—his claim for injunctive relief must fail as well. In other words, it is not impossible that Valiente's claim for injunctive relief could proceed even where he failed to plausibly allege an economic injury. For example, in seeking declaratory or injunctive relief pursuant to Florida's Deceptive and Unfair Trade Practices Act, a plaintiff must establish only that she has been "aggrieved" by the conduct at issue. Fla. Stat. § 501.211(1). However, neither Valiente's amended complaint nor his response to Publix's motion to dismiss suggest any injury other than his purported economic harm under the price premium theory. Thus, he has not sufficiently alleged that he suffered any other kind of loss or otherwise been "aggrieved" by Publix's conduct.

Second, even if Valiente had pled a plausible injury, he would still fail to establish Article III standing for purposes of injunctive relief because he has not alleged how he will be impacted by Publix's alleged wrongful conduct in the

future. "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1229 (11th Cir. 2021) (cleaned up). "Applying these standards, '[s]everal . . . circuits have considered whether a previously [but no longer] deceived consumer has standing to seek injunctive relief and have held they do not.'" *Rife v. Newell Brands, Inc.,* No. 20-80021-CIV, 2022 U.S. Dist. LEXIS 179248, at *31-32 (S.D. Fla. Sep. 30, 2022) (Altman, J.) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 n.5 (9th Cir. 2018)).

Valiente's only forward-looking allegations state that he "intends to, seeks to, and will purchase the [cough drops] again when he can do so with the assurance the [p]roduct's representations are consistent with its abilities, attributes, and/or composition[,]" and that he "is unable to rely on the labeling and representations not only of [Publix's cough drops], but for other similar cough suppressant and oral anesthetic lozenges with added fruit ingredients and promises to soothe sore throats, because he is unsure whether those representations are truthful." (Am. Compl. ¶¶ 77–79, ECF No. 9.) These allegations do not show Valiente suffering a future harm. To the contrary, they indicate that he will not purchase either Publix's cough drops or similar products until he can be sure that his purported concerns have been cured.

Because Valiente's "allegations make clear that [he] will not purchase more of [the purportedly deceptive] products so long as the labelling does not meet [his] standards[,]" he "lack[s] standing to assert a claim for injunctive relief." *See Snyder v. Green Rds. of Fla. LLC*, 430 F. Supp. 3d 1297, 1304 (S.D. Fla. 2020) (Ungaro, J.); *see also Barron v. Snyder's-Lance, Inc.,* 2015 U.S. Dist. LEXIS 189625, 2015 WL 11182066, at *10 (S.D. Fla. Mar. 20, 2015) (Lenard, J.) ("The Court finds that Plaintiffs have not established a real and immediate threat of future injury, because they have not alleged that they intend to purchase the allegedly mislabeled product again.").

### 4. Conclusion

For the reasons stated above, the Court finds that it lacks subject matter jurisdiction because Valiente has failed to plausibly plead Article III standing. The Court thus **grants** Publix's motion to dismiss. (**Mot., ECF No. 11**.) In addition, because "[a] dismissal for lack of subject matter jurisdiction is not a judgment on the merits[,]" the Court dismisses Valiente's amended complaint "**without prejudice**." *See Stalley v. Orlando Reg'l Healthcare Sys.,* 524 F.3d 1229, 1232 (11th Cir. 2008) (emphasis added) (remanding with instructions to reenter judgment without prejudice where the district court dismissed for lack

for standing); *see also Koonce-Hope v. Bass*, No. 22-11706, 2023 U.S. App. LEXIS 5649, at *4 (11th Cir. Mar. 9, 2023).

Finally, the Court dismisses Valiente's complaint **without leave to amend**. Valiente requests leave to amend as an afterthought, at the end of his response in opposition to Publix's motion to dismiss, making the request both procedurally defective and lacking in substantive support under Eleventh Circuit Precedent. *See Newton v. Florida*, 895 F.3d 1270, 1277-78 (11th Cir. 2018) (reaffirming the rule that a request for leave to amend is not properly raised if embedded in a memorandum in opposition to a motion to dismiss); *see also Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend."). The Court will not now afford Valiente another bite at the apple where he declined "to follow the well-trodden procedural path toward amendment." *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 Fed. App'x 925, 930 (11th Cir. 2016).

The Clerk is directed to **close** this case.

**Done and ordered** at Miami, Florida on May 24, 2023.

_____
Robert N. Scola, Jr.
United States District Judge